1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10    DEON CARROLL,

11              Plaintiff,            No. 2:12-cv-1327 KJN P

12        vs.

13    CALIFORNIA DEPARTMENT OF
      CORRECTIONS AND
14    REHABILITATION ("CDCR"),
      et al.,
15
                Defendants.            ORDER
16    _____/

17    I.  Introduction

18              Plaintiff is a state prisoner proceeding without counsel.  Plaintiff seeks relief

19    pursuant to 42 U.S.C. § 1983, and has requested leave to proceed in forma pauperis pursuant to

20    28 U.S.C. § 1915.  This proceeding was referred to this court pursuant to 28 U.S.C. § 636(b)(1)

21    and Local Rule 302.  Plaintiff consented to proceed before the undersigned for all purposes.  See

22    28 U.S.C. § 636(c).

23    II.  Procedural History

24              On January 16, 2013, this action was dismissed based on plaintiff's failure to

25    timely provide an application to proceed in forma pauperis and a certified trust account statement

26    for the six months prior to filing this action.  On February 4, 2013, plaintiff filed a motion for

1

1  reconsideration, for an extension of time, and for appointment of counsel.  On February 20, 2013,

2  plaintiff filed a complete application to proceed in forma pauperis, and a second motion for

3  reconsideration and request for appointment of counsel.

4        Good cause appearing, plaintiff's motions for reconsideration are granted.  The

5  January 16, 2003 order and judgment are vacated.  Plaintiff's motion for extension of time is

6  moot in light of this order.  The court will address plaintiff's motion for appointment of counsel

7  after ruling on plaintiff's request to proceed in forma pauperis, and screening plaintiff's

8  complaint.

9  III.  Request to Proceed In Forma Pauperis

10       Plaintiff has submitted a declaration that makes the showing required by

11  28 U.S.C. § 1915(a).  Accordingly, the request to proceed in forma pauperis will be granted.

12       Plaintiff is required to pay the statutory filing fee of $350.00 for this action.

13  28 U.S.C. §§ 1914(a), 1915(b)(1).  By this order, plaintiff will be assessed an initial partial filing

14  fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1).  By separate order, the court

15  will direct the appropriate agency to collect the initial partial filing fee from plaintiff's prison

16  trust account and forward it to the Clerk of the Court.  Thereafter, plaintiff will be obligated to

17  make monthly payments of twenty percent of the preceding month's income credited to

18  plaintiff's prison trust account.  These payments will be forwarded by the appropriate agency to

19  the Clerk of the Court each time the amount in plaintiff's account exceeds $10.00, until the filing

20  fee is paid in full.  28 U.S.C. § 1915(b)(2).

21  IV.  Screening

22       The court is required to screen complaints brought by prisoners seeking relief

23  against a governmental entity or officer or employee of a governmental entity.  28 U.S.C.

24  § 1915A(a).  The court must dismiss a complaint or portion thereof if the prisoner has raised

25  claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be

26  granted, or that seek monetary relief from a defendant who is immune from such relief.

1 | 28 U.S.C. § 1915A(b)(1),(2).

2 |      A claim is legally frivolous when it lacks an arguable basis either in law or in fact.

3 | Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28

4 | (9th Cir. 1984).  The court may, therefore, dismiss a claim as frivolous when it is based on an

5 | indisputably meritless legal theory or where the factual contentions are clearly baseless.  Neitzke,

6 | 490 U.S. at 327.  The critical inquiry is whether a constitutional claim, however inartfully

7 | pleaded, has an arguable legal and factual basis.  See Jackson v. Arizona, 885 F.2d 639, 640 (9th

8 | Cir. 1989), superseded by statute as stated in Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir.

9 | 2000) ("a judge may dismiss [in forma pauperis] claims which are based on indisputably

10 | meritless legal theories or whose factual contentions are clearly baseless."); Franklin, 745 F.2d at

11 | 1227.

12 |      Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and

13 | plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the

14 | defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic

15 | Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47

16 | (1957).  In order to survive dismissal for failure to state a claim, a complaint must contain more

17 | than "a formulaic recitation of the elements of a cause of action;" it must contain factual

18 | allegations sufficient "to raise a right to relief above the speculative level." Id.  However,

19 | "[s]pecific facts are not necessary; the statement [of facts] need only 'give the defendant fair

20 | notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551

21 | U.S. 89, 93 (2007) (quoting Bell Atlantic Corp., 550 U.S. at 555) (citations and internal

22 | quotations marks omitted).  In reviewing a complaint under this standard, the court must accept

23 | as true the allegations of the complaint in question,  id., and construe the pleading in the light

24 | most favorable to the plaintiff.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other

25 | grounds, Davis v. Scherer, 468 U.S. 183 (1984).

26 | ////

1    Although plaintiff's complaint is only seven pages long, plaintiff names seventeen

2    defendants, many of whom are wardens at different state prisons, and raises claims encompassing

3    four federal venues.  The alleged incidents occurred from September of 2009 through March of

4    2012, at six different state prisons.  Plaintiff's claims range from alleged "manufactured" rules

5    violations reports, sexual assault and abuse, forced medication without court order, deprivation

6    of privileges, verbal threats, etc., including vague allegations concerning the "Green Wall."

7    Plaintiff alleges that because he reported "being a victim of sexual/physical abuse by

8    CDCR/CCPOA/DMH 'Green Wall' staff, [he has] been repeatedly retaliated against."  (Dkt. No.

9    1 at 3.)  Plaintiff claims he's "been passed around by CDCR Green Wall staff like [he is] an Abu-

10   Graib [sic] sex slave."  (Id.)

11    Plaintiff initially challenges the alleged misconduct of correctional officers at

12   California State Prison-Sacramento ("CSP-SAC"), claiming he reported all the incidents to CSP-

13   SAC Warden Tim Virga.  Plaintiff then claims he was forcibly medicated by CDCR/DMH/CMF

14   staff, apparently at California Medical Facility in Vacaville ("CMF").  Plaintiff then alleges he

15   sustained a manufactured rules violation while held at California State Prison-Corcoran ("CSP-

16   COR")  In 2012, plaintiff alleged he was threatened while housed at RJ Donovan Prison in San

17   Diego ("RJD"), and was intentionally housed with a known rapist who attacked plaintiff.

18   Plaintiff states he reported this incident to RJD Warden Paramo.  In August 2011, plaintiff was

19   taken to Deuel Vocation Institute in Tracy ("DVI"), where he claims he was sexually assaulted

20   again.  On August 20, 2011, plaintiff was taken to San Joaquin Hospital, where he was allegedly

21   refused the right to talk to a lawyer or have a sexual assault victim advocate present during exam.

22   Plaintiff reported this incident to the DVI Warden.

23    On March 27, 2012, plaintiff claims he was taken to "Supp/DMH/Green Wall

24   Headquarters," where he alleges he was deprived of privileges, victimized by employee sexual

25   misconduct, denied seizure medications, physically assaulted by defendant Houston, forcibly

26   medicated in retaliation for reporting sexual misconduct, threatened with death, and that plaintiff

4

1   would be tortured until plaintiff killed himself, or they would hang him to make it look like

2   suicide because plaintiff reported defendant Houston.  Finally, plaintiff claims defendant

3   Houston verbally threatened plaintiff.  Plaintiff states these claims were reported to Warden

4   Hedgpeth and the Department of Mental Health ("DMH") supervisor.  Because defendant

5   Hedgpeth is Warden at Salinas Valley State Prison, in Soledad ("SVSP"), it appears plaintiff was

6   housed at SVSP during these incidents.

7              Thus, the complaint details wide-ranging instances of allegedly unconstitutional

8   conduct, pursuant to the First, Eighth and Fourteenth Amendments to the United States

9   Constitution.  Plaintiff seeks money damages, and asks the court to compel the CDCR and DMH

10  to turn over all incident reports and medical records so plaintiff can name all staff.  Plaintiff

11  seeks a court order requiring the CDCR to house plaintiff anywhere except "CDCR 'Green Wall'

12  strongholds:  CSP-SAC, CSP-COR, RJD, SVSP, HDSP, PVSP, PBSP, KVSP, and NKSP;" and

13  to "drop all RVR's after September 2009," and to protect plaintiff.  (Dkt. No. 1 at 3.)

14             The court finds that the complaint does not contain a short and plain statement as

15  required by Federal Rules Civil Procedure 8(a)(2).  Although the Federal Rules adopt a flexible

16  pleading policy, a complaint must give fair notice to each of the defendants and state the

17  elements of each claim plainly and succinctly.  Jones v. Cmty Redev. Agency, 733 F.2d 646, 649

18  (9th Cir. 1984).  The complaint is so wide ranging with respect to time, claims, defendants, and

19  venue that it comprises a "shotgun" pleading requiring amendment.  See, e.g., Byrne v. Nezhat,

20  261 F.3d 1075, 1129 (11th Cir. 2001) ("a shotgun complaint leads to a shotgun answer" and

21  "disjointed pleadings make it difficult, if not impossible, to set the boundaries for discovery");

22  Anderson v. Dist. Bd. of Trustees of Centr. Florida Comm. Coll., 77 F.3d 364, 366-67 (11th Cir.

23  1996) ("[e]xperience teaches that, unless cases are pled clearly and precisely, issues are not

24  joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants

25  suffer, and society loses confidence in the court's ability to administer justice"); Smith v. Rainey,

26  2010 WL 4118096, 16 (M.D. Fla. 2010) ("[w]hatever the merits of the underlying claim(s),

[p]laintiff[] risk[s] having them overshadowed by the manner in which these claims are alleged").

Plaintiff's allegations must be refined and set forth in at least four separate pleadings, each filed in the appropriate federal judicial districts, i.e., the Sacramento Division of the United States District Court for the Eastern District of California (plaintiff's claims against CSP-SAC, CMF, and DVI officials), the Fresno Division of the United States District Court for the Eastern District Court of California (plaintiff's claims associated with CSP-COR), the United States District Court for the Northern District of California (plaintiff's claims based on incidents at SVSP), and the United States District Court for the Southern District Court of California (plaintiff's claims based on incidents at RJD).  The bulk of plaintiff's allegations here pertain to incidents that occurred at CSP-SAC.  Therefore, the court will dismiss the instant complaint with leave to file an amended complaint that is limited, in this court, to plaintiff's allegations relative to CSP-SAC.  Following is information to assist plaintiff in preparing his amended complaint:

1. The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See Monell v. Department of Social Servs., 436 U.S. 658, 692 (1978) ("Congress did not intend § 1983 liability to attach where . . . causation [is] absent."); Rizzo v. Goode, 423 U.S. 362 (1976) (no affirmative link between the incidents of police misconduct and the adoption of any plan or policy demonstrating their authorization or approval of such misconduct).  "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is

////

6

1  legally required to do that causes the deprivation of which complaint is made." Johnson v.

2  Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

3  Moreover, supervisory personnel are generally not liable under § 1983 for the

4  actions of their employees under a theory of respondeat superior and, therefore, when a named

5  defendant holds a supervisorial position, the causal link between him and the claimed

6  constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862

7  (9th Cir. 1979) (no liability where there is no allegation of personal participation); Mosher v.

8  Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979) (no liability where

9  there is no evidence of personal participation).  Vague and conclusory allegations concerning the

10  involvement of official personnel in civil rights violations are not sufficient.  See Ivey v. Board

11  of Regents, 673 F.2d 266, 268 (9th Cir. 1982) (complaint devoid of specific factual allegations of

12  personal participation is insufficient).

13  2.  Plaintiff may not seek damages from the CDCR.  "The Eleventh Amendment

14  bars suits against the State or its agencies for all types of relief, absent unequivocal consent by

15  the state."  Romano v. Bible, 169 F.3d 1182, 1185 (9th Cir.1999) (citing Pennhurst v.

16  Halderman, 465 U.S. 89, 100 (1984)).

17  3.  To state a claim for retaliation under the First Amendment, plaintiff must

18  allege that on a specified date an individual state actor or actors took adverse action against

19  plaintiff for his engagement in a constitutionally protected activity and that the adverse action did

20  not reasonably advance a legitimate penological goal.  Rhodes v. Robinson, 408 F.3d 559,

21  567-68 (9th Cir. 2005); Rizzo v. Dawson, 778 F.2d 527, 531-32 (9th Cir. 1985).  Direct and

22  tangible harm (e.g., physical injury) will support a First Amendment retaliation claim even

23  without demonstration of a chilling effect on the further exercise of a prisoner's First

24  Amendment rights.  Rhodes, at 568 n.11; see also, Brodheim v. Cry, 584 F.3d 1262, 1269 (9th

25  Cir. 2009).

26  ////

7

1          4.  Plaintiff's allegations of sexual assault or abuse are too vague and conclusory

2   to determine whether they state a cognizable claim.  A pro se complaint must contain more than

3   "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause

4   of action."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007).  "Threadbare recitals

5   of the elements of a cause of action, supported by mere conclusory statements do not suffice."

6   Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  Furthermore, a claim upon which the court can

7   grant relief must have facial plausibility.  Twombly, 550 U.S. at 570.  "A claim has facial

8   plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

9   inference that the defendant is liable for the misconduct alleged."  Iqbal, 129 S. Ct. at 1949.  The

10  following standards provide useful information for plaintiff to determine whether his claim rises

11  to the level of a constitutional violation.

12          "The Eighth Amendment, in only three words, imposes the constitutional

13  limitation upon punishments:  they cannot be 'cruel and unusual.'  The Court has interpreted

14  these words in a flexible and dynamic manner, and has extended the Amendment's reach beyond

15  the barbarous physical punishments at issue in the Court's earliest cases."  Rhodes v. Chapman,

16  452 U.S. 337, 345 (1981) (citations and internal quotation marks omitted).  "Whether a particular

17  event or condition in fact constitutes 'cruel and unusual punishment' is gauged against 'the

18  evolving standards of decency that mark the progress of a maturing society.'"  Schwenk v.

19  Hartford, supra, 204 F.3d at 1196, quoting Hudson v. McMillian, 503 U.S. 1, 8 (1992) (citations

20  and quotation marks omitted).  A viable Eighth Amendment prison claim requires proof of both

21  an "objective component" ("[w]as the deprivation sufficiently serious?"), and a "subjective

22  component" ("[d]id the official[] act with a sufficiently culpable state of mind?").  Wilson v.

23  Seiter, 501 U.S. 294, 298 (1991).

24          Physical sexual assault by a prison official on an inmate is deeply offensive to

25  human dignity, lacks any legitimate penological objective, and therefore violates the Eighth

26  Amendment.  Schwenk, 204 F.3d at 1196-97; accord Boddie v. Schnieder, 105 F.3d 857, 861 (2d

8

1  Cir.1997) ("sexual abuse of a prisoner by a corrections officer has no legitimate penological

2  purpose, and is 'simply not part of the penalty that criminal offenders pay for their offenses

3  against society,'" quoting Farmer v. Brennan, 511 U.S. 825, 834 (1970).  Thus, a claim of

4  physical sexual assault by a prison official against an inmate will almost always survive summary

5  judgment.  See, e.g., Women Prisoners of the Dist. of Columbia Dept. of Corrections, 877 F.

6  Supp. 634, 665 (D.D. Cir. 1994) ("Rape, coerced sodomy, unsolicited touching of women

7  prisoners' vaginas, breasts and buttocks by prison employees are 'simply not part of the penalty

8  that criminal offenders pay for their offenses against society'" (quoting Farmer, 511 U.S. at

9  834)), aff'd in part and vacated in part, 93 F.3d 910 (D.C. Cir. 1996); Mathie v. Fries, 935

10 F.Supp. 1284, 1301 (E.D. N.Y. 1996) (denying qualified immunity to director of prison security

11 because "any reasonable prison Director of Security knew that to try to force unwanted and

12 prohibited sexual acts on a powerless inmate is objectively unreasonable and in violation of the

13 inmates rights").

14          However, inmate sexual harassment claims, which allege sexually inappropriate

15 touching and/or sexually inappropriate comments, require a careful assessment of the unique

16 circumstances of each case.  Claims premised only on alleged verbal sexual harassment are

17 generally not cognizable.  "Although the Ninth Circuit has recognized that sexual harassment

18 may constitute a cognizable claim for an Eighth Amendment violation, the Court has specifically

19 differentiated between sexual harassment that involves verbal abuse and that which involves

20 allegations of physical assault, finding [only] the later to be in violation of the constitution."

21 Minifield v. Butikofer, 298 F. Supp. 2d 900, 904 (N.D. Cal. 2004), citing Schwenk, supra, 204

22 F.3d at 1198.  "[T]he Eighth Amendment's protections do not necessarily extend to mere verbal

23 sexual harassment."  Austin v. Terhune, 367 F.3d 1167, 1172 (9th Cir. 2004), citing Blueford v.

24 Prunty, 108 F.3d 251, 254-55 (9th Cir. 1997) (prison guard who allegedly engaged in "vulgar

25 same-sex trash talk" with inmates entitled to qualified immunity); and Somers v. Thurman, 109

26 F.3d 614, 624 (9th Cir. 1997) (female correctional officers who allegedly made improper

statements about plaintiff while he showered entitled to qualified immunity).

Similarly, claims alleging sexually inappropriate conduct that does not include touching have generally been found to be noncognizable under the Eighth Amendment.  In Austin v. Terhune, supra, 367 F.3d 1167, the Ninth Circuit upheld dismissal of an Eighth Amendment claim premised on allegations that defendant correctional officer Williams, "[w]hile still in the control booth, which had a large glass window, . . . allegedly unzipped his pants, exposed his penis to Austin, who is black, and said 'come suck this white dick, boy,' while shaking his exposed penis at Austin." Id. at 1169.  The Ninth Circuit ruled that "the district court properly concluded that this incident was not sufficiently serious to constitute an Eighth Amendment violation," because "Williams was in an elevated, glass-enclosed control booth when he exposed himself to Austin and this isolated incident lasted for a period of no more than 30-40 seconds [and] Williams never physically touched Austin."  Id. at 1171-72; accord Somers, 109 F.3d at 624 ("[t]o hold that gawking, pointing, and joking violates the prohibition against cruel and unusual punishment would trivialize the objective component of the Eighth Amendment test and render it absurd"); see also Jonas v. Idaho, 2006 WL 3197158, *3 (D. Idaho 2006) (physician's allegedly obscene gesture during inmate's medical appointment found analogous to harassment found insufficient to state an Eighth Amendment claim in Austin, supra, 367 F.3d 1167).

Inmate sexual harassment claims that allege brief inappropriate touching by a correctional official are generally found to be noncognizable, particularly if the alleged touching occurred pursuant to an authorized search.  "Even if plaintiff believed that there was a sexual aspect to the search, more is needed." Smith v. Los Angeles County, 2010 WL 2569232, *5 (C.D. Cal. 2010); adopted by 2010 WL 2572570 (C.D. Cal.  2010); aff'd, 452 Fed. Appx. 768 (9th Cir. 2011) (pretrial detainee failed to state Fourteenth Amendment due process claim, or Fourth Amendment unreasonable search claim, based on plaintiff's allegations that defendant correctional officer, pursuant to a search and without sexual comment, pulled plaintiff's boxers

1    to look at his buttocks, inserted his hand "karate chop" style, into "the cavity of my buttocks . . .

2    until it passed between my legs and reached under and around until he cupped by genitals," id. at

3    *4); citing Berryhill v. Schriro, 137 F.3d 1073, 1076 (8th Cir. 1998) (affirming summary

4    judgment for defendant on plaintiff's Eighth Amendment claim that prison employee's brief

5    touch ("mere seconds") to plaintiff's buttocks during "horseplay," unaccompanied by sexual

6    comments, was an improper sexual advance that "embarrassed" plaintiff ); and Osterloth v.

7    Hopwood, 2006 WL 3337505, *6, *7 (D. Mont. 2006) (dismissing Eighth Amendment claim

8    challenging as sexually abusive an officer's search of plaintiff that allegedly included the officer

9    reaching between plaintiff's legs, grabbing his scrotum and penis, and sliding his hand between

10   plaintiff's buttocks, wherein plaintiff stated to the officer, "that was pretty much sexual assault,"

11   and officer responded, "yah pretty much.").

12        More recently, in Watison v. Carter, 668 F.3d 1108, 1112-14 (9th Cir., Feb. 13,

13   2012), the Ninth Circuit affirmed the dismissal of an inmate's Eighth Amendment sexual

14   harassment claim against a correctional officer who allegedly entered plaintiff's cell while

15   plaintiff was on the toilet, rubbed his thigh against plaintiff's thigh and "began smiling in a

16   sexual contact (sic)," then left plaintiff's cell laughing.  The Ninth Circuit ruled that "[t]he

17   'humiliation' Watison allegedly suffered from the incident with Officer LaGier does not rise to

18   the level of severe psychological pain required to state an Eighth Amendment claim."  Id. at

19   1113.  Moreover, the Ninth Circuit found that "Officer LaGier's alleged wrongdoing was not

20   objectively harmful enough to establish a constitutional violation. . . ."  Id. at 1114 (citations and

21   internal quotation marks omitted).

22        Because of the nature of plaintiff's allegations, plaintiff must include specific

23   facts in the amended complaint to enable the court to determine whether plaintiff states a

24   cognizable civil rights claim on the basis of sexual misconduct.  Iqbal, 129 S. Ct. at 1949.  For

25   example, plaintiff should provide details of each defendant's alleged sexual misconduct, such as

26   how plaintiff was inappropriately touched, whether anyone witnessed the touching, in what part

of the prison the alleged touching occurred, what time of day the alleged touching occurred, and whether there was more than one touching by that defendant.

5. Plaintiff fails to identify the individuals who allegedly sexually assaulted plaintiff at CSP-SAC. From plaintiff's requested relief, it appears plaintiff may not know the names of some of the defendants. Plaintiff is advised that some of the documents he seeks are available for his review in his prison central file, for example, his medical records, and rules violation reports. There are procedures in place to enable plaintiff to review these records on his own, and he has an obligation to review these records in preparation for bringing a lawsuit against a particular defendant. By signing an amended complaint, plaintiff certifies he has made reasonable inquiry and has evidentiary support for his allegations, and for violation of this rule the court may impose sanctions sufficient to deter repetition by plaintiff or others. Fed. R. Civ. P. 11.

6. The amended complaint must allege in specific terms how each named defendant is involved. Rizzo v. Goode, 423 U.S. at 371. There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. Id.; May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d at 743.

7. In an amended complaint, the allegations must be set forth in numbered paragraphs. Fed. R. Civ. P. 10(b). Plaintiff may join multiple claims if they are all against a single defendant. Fed. R. Civ. P. 18(a). If plaintiff has more than one claim based upon separate transactions or occurrences, the claims must be set forth in separate paragraphs. Fed. R. Civ. P. 10(b). Unrelated claims against different defendants must be pursued in multiple lawsuits. "The controlling principle appears in Fed. R. Civ. P. 18(a):

> 'A party asserting a claim . . . may join, [] as independent or as alternate claims, as many claims . . . as the party has against an opposing party.' Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against

12

1           different defendants belong in different suits, not only to prevent
          the sort of morass [a multiple claim, multiple defendant] suit

2           produce[s], but also to ensure that prisoners pay the required filing
          fees -- for the Prison Litigation Reform Act limits to 3 the number

3           of frivolous suits or appeals that any prisoner may file without
          prepayment of the required fees.  28 U.S.C. § 1915(g).

4

5 George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007); see also Fed. R. Civ. P. 20(a)(2) (joinder of

6 defendants not permitted unless both commonality and same transaction requirements are

7 satisfied).

8         8.  Local Rule 220 requires that an amended complaint be complete in itself

9 without reference to any prior pleading.  See also Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).

10 Once plaintiff files an amended complaint, the original pleading no longer serves any function in

11 the case.  Therefore, in an amended complaint, as in an original complaint, each claim and the

12 involvement of each defendant must be sufficiently alleged.

13 V.  Request for Appointment of Counsel

14         Finally, plaintiff requests that the court appoint counsel.  District courts lack

15 authority to require counsel to represent indigent prisoners in section 1983 cases.  Mallard v.

16 United States Dist. Court, 490 U.S. 296, 298 (1989).  In exceptional circumstances, the court

17 may request an attorney to voluntarily to represent such a plaintiff.  See 28 U.S.C. § 1915(e)(1);

18 Terrell v. Brewer, 935 F.2d 1015, 1017 (9th Cir. 1991); Wood v. Housewright, 900 F.2d 1332,

19 1335-36 (9th Cir. 1990).  When determining whether "exceptional circumstances" exist, the

20 court must consider plaintiff's likelihood of success on the merits as well as the ability of the

21 plaintiff to articulate his claims pro se in light of the complexity of the legal issues involved.

22 Palmer v. Valdez, 560 F.3d 965, 970 (9th Cir. 2009) (district court did not abuse discretion in

23 declining to appoint counsel).  The burden of demonstrating exceptional circumstances is on the

24 plaintiff.  Id.  Circumstances common to most prisoners, such as lack of legal education and

25 limited law library access, do not establish exceptional circumstances that warrant a request for

26 voluntary assistance of counsel.

Having considered the factors under Palmer, the court finds that plaintiff has failed to meet his burden of demonstrating exceptional circumstances warranting the appointment of counsel at this time.  Thus, plaintiff's motions are denied.

VI.  Conclusion

In accordance with the above, IT IS HEREBY ORDERED that:

1.  Plaintiff's motions for reconsideration (dkt. nos. 17 & 19) are granted;

2.  The January 16, 2013 order and judgment (dkt. nos. 15 & 16) are vacated;

3.  Plaintiff's motion for extension of time (dkt. no. 17) is denied as moot;

4.  Plaintiff's request for leave to proceed in forma pauperis is granted.

5.  Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action. Plaintiff is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1).  All fees shall be collected and paid in accordance with this court's order to the Director of the California Department of Corrections and Rehabilitation filed concurrently herewith.

6.  Plaintiff's complaint is dismissed.  Plaintiff is granted leave to amend to only raise claims based on incidents at CSP-SAC.

7.  Within thirty days from the date of this order, plaintiff shall complete the attached Notice of Amendment and submit the following documents to the court:

a.  The completed Notice of Amendment; and

b.  An original and one copy of the Amended Complaint. Plaintiff's amended complaint shall comply with the requirements of the Civil Rights Act, the Federal Rules of Civil Procedure, and the Local Rules of Practice.  The amended complaint must also bear the docket number assigned to this case and must be labeled "Amended Complaint."

////

////

////

14

1    Failure to file an amended complaint in accordance with this order may result in the dismissal of

2    this action.

3                    8.  Plaintiff's requests for appointment counsel (dkt. nos. 17 & 19) are denied

4    without prejudice.

5    DATED:  March 28, 2013

6

7

8    KENDALL J. NEWMAN
     UNITED STATES MAGISTRATE JUDGE

9    carr1327.14

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

1

2

3

4

5

6

7

8             IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10  DEON CARROLL,

11             Plaintiff,              No. 2:12-cv-1327 KJN P

12      vs.

13  CDCR, et al.,                      NOTICE OF AMENDMENT

14             Defendants.

15  _____/

16             Plaintiff hereby submits the following document in compliance with the court's

17  order filed _____:

18             _____      Amended Complaint

19  DATED:

20

21                                    _____

22                                    Plaintiff

23

24

25

26