UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TREMAINE DEON CARROLL,<br><br>          Plaintiff,<br><br>   v.<br><br>TIM VIRGA, et al.,<br><br>          Defendants. | No.  2:12-cv-1327 KJN P<br><br><br><br>ORDER |

      Plaintiff is a state prisoner proceeding without counsel.  Plaintiff consented to proceed before the undersigned for all purposes.  See 28 U.S.C. § 636(c).  By order filed March 29, 2013, plaintiff's civil rights complaint was dismissed, and plaintiff was granted leave to file an amended complaint raising claims based on incidents at California State Prison, Sacramento ("CSP-SAC") within thirty days.  Rather than file an amended complaint, plaintiff filed a document styled, "Objection to Court's Order, Motion for Reconsideration on Amendment, Appointment of Counsel."  (ECF No. 23.)  The court construes this filing as a request for reconsideration of the court's March 29, 2013 orders.

      In his request, plaintiff renews his claim that the California Department of Corrections and Rehabilitation ("CDCR") operates a "green wall" in which all the named defendants operate as a

////

////

1

gang, and which plaintiff identifies as the CDCR/CCPOA[1]/Green Wall.  (ECF No. 23 at 1.)  Plaintiff argues that just as any other gang would fall under one uniform indictment, the defendants named in plaintiff's original complaint systematically abused plaintiff and violated his civil, constitutional, and human rights while he was incarcerated at various prisons throughout California.  (ECF No. 23 at 2.)  Plaintiff now claims that he has been transferred over 100 times, resulting in the loss of thousands of dollars' worth of personal property, in an effort to hide plaintiff from his family, and to mentally and physically torture plaintiff.  (ECF No. 23 at 2.)  Plaintiff provides an article concerning inmates at the Los Angeles County Jail, and claims that he is going through the same abuse as the Los Angeles County Jail inmates.  (ECF No. 23 at 10-20.)

Plaintiff claims that he has been "beaten, sexually assaulted, and set-up with manufactured rules violations reports/manufactured lies in central/medical file, loss of property, loss of relationships with family and loved ones due to MML/phone manipulation by staff" based on a handwritten statement he signed on September 18, 2009.  (ECF No. 23 at 2.)  Plaintiff now claims that the CCPOA has formed a "brown wall" at R.J. Donovan State Prison ("RJD"), where plaintiff is presently housed, and are "breaking rules, laws, and acting like the Mexican Mafia."  (ECF No. 23 at 3.)  Plaintiff contends he suffers from serious mental health issues, and is prescribed anti-psychotic drugs, as demonstrated by an order addressing his petition for writ of habeas corpus filed in the Central District.  (Id.)

In the 2009 handwritten statement, plaintiff contended that seasoned correctional officers at CSP-SAC were following the script of the television show, "The Shield," using the moniker, "The Green Monster," and claiming nothing can stop them because they are backed by the CCPOA.  (ECF No. 23 at 22.)  Plaintiff claimed the Green Monster was spearheaded by officers Skruggs [sic] and Stinson, who allegedly sold cellphones and tobacco, and the officer who did not sell the product then conducted a raid to confiscate the product.  Plaintiff claimed that the Green Monster had tower officers who monitored which inmates used prison collect phone calls and then other officers would solicit inmates to purchase cellphones to avoid the collect call rates.

---

[1] CCPOA is the acronym for the California Correctional Peace Officers Association.

1  Plaintiff conceded that he bought a cell phone from an officer and later, when plaintiff's cell was
2  searched, the searching officer demanded to know where the cellphone was that plaintiff had
3  purchased from the officer's "partner."  (ECF No. 23 at 23.)  Plaintiff also contended that during
4  the search, the officer planted drugs in plaintiff's cell.  Plaintiff asked that the Green Monster be
5  investigated and stopped.  (ECF No. 23 at 23.)  Plaintiff also alleged that his anti-psychotic
6  medications were withheld for several months to make his claims seem bizarre and without merit.

   In ruling on a motion to dismiss plaintiff's habeas petition as barred by the statute of
limitations, the United States District Court for the Central District of California noted that
plaintiff's psychiatrist at Salinas Valley State Prison said that plaintiff suffers from psychosis
NOS ("Not Otherwise Specified"), "a condition in which the patient's thinking is fragmented,
lacks order, and may include bizarre delusional content."  (ECF No. 23 at 40.)  Plaintiff was seen
68 times by mental health clinicians from May 1, 2002, to November 18, 2003.  (Id.)  Extensive
medical records indicated that plaintiff was suffering from delusions, hearing voices, and suffered
from paranoid thinking.  (ECF No. 23 at 41.)  Psychological staff found plaintiff had "major
mental illness requiring placement in the CCCMS program," and he was diagnosed with
hallucinations.  (ECF No. 23 at 41.)

> With respect to non-final orders . . . , the Ninth Circuit has recognized that as long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient.  This inherent power is grounded in the common law and is not abridged by the Federal Rules of Civil Procedure.  In addition to the inherent power to modify a nonfinal order, Rule 54(b) authorizes a district court to revise a non-final order at any time before entry of a judgment adjudicating all the claims. . . .  As to inherent authority, a district court may reconsider and modify an interlocutory decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of controlling law.  But a court should generally leave a previous decision undisturbed absent a showing that it either represented clear error or would work a manifest injustice.  Rule 54(b) does not address the standards which a court should apply when assessing a motion to modify an interlocutory order; however, courts look to the standards under Rule 59(e) and Rule 60(b) for guidance.

Jadwin v. County of Kern, 2010 WL 1267264, *9  (E.D. Cal. Mar. 31, 2010), citations and
quotations omitted.  "A motion for reconsideration should not be granted, absent highly unusual

3

1  circumstances, unless the district court is presented with newly discovered evidence, committed
2  clear error, or if there is an intervening change in the controlling law." 389 Orange Street
3  Partners v. Arnold, 179 F.3d 656, 665 (9th Cir. 1999).
4      The undersigned reviewed the March 29, 2013 order, but declines to reconsider the
5  dismissal based on the implausibility of plaintiff's allegations contained in the original complaint.
6  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory
7  statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009), citing Bell Atlantic
8  Corp., 550 U.S. at 555.  Plaintiff must set forth "sufficient factual matter, accepted as true, to
9  'state a claim to relief that is plausible on its face.'" Iqbal, 129 S. Ct. at 1949 (quoting Bell
10 Atlantic Corp., 550 U.S. at 570).

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

16 Iqbal, 129 S. Ct. at 1949 (citations and quotation marks omitted). Although legal conclusions can
17 provide the framework of a complaint, they must be supported by factual allegations, and are not
18 entitled to the assumption of truth. Id. at 1950. Plaintiff's allegations that correctional officers
19 across the state are acting as part of a gang, bent on subjecting plaintiff to violations of his
20 constitutional rights are implausible on their face. Similarly, plaintiff's 2009 claim that
21 correctional officers at CSP-SAC are part of a gang known as the Green Monster are implausible.
22      However, in his recent filing, plaintiff claims that he has sustained injuries based on
23 prison officials transferring him over 100 times. Plaintiff appends a copy of his prison trust
24 account statement that suggests plaintiff was transferred six times between August 7, 2012, and
25 September 7, 2012, and four times between January 5, 2013, and January 12, 2013.  (ECF No. 23
26 at 5-6.)  While these ten transfers do not approach the number 100, plaintiff may be able to state a
27 ////
28 ////

4

cognizable civil rights claim if he can allege excessive transfers, either retaliatory in nature,[2] or subjecting plaintiff to cruel and unusual punishment in violation of the Eighth Amendment, and can link such claims to named individuals responsible for each transfer.

Nevertheless, plaintiff is cautioned that exhaustion in prisoner cases covered by 42 U.S.C. § 1997e(a) is mandatory. Porter v. Nussle, 534 U.S. 516, 524 (2002). Exhaustion is a prerequisite for all prisoner suits regarding conditions of confinement, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. Porter, 534 U.S. at 532. Thus, in any amended complaint, plaintiff should only include claims for which he has exhausted his administrative remedies prior to the filing of the instant action.

Accordingly, the court grants plaintiff leave to file an amended complaint concerning incidents at CSP-SAC, as set forth in this court's March 29, 2013 order, or[3] that challenges the allegedly excessive transfers, provided plaintiff can allege facts demonstrating that such transfers violated his constitutional rights and served no legitimate penological interest.

---

[2] "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). An allegation of harm may be sufficient even if an inmate cannot allege a chilling effect. Id. In order to prevail on a retaliation claim, plaintiff must demonstrate that he engaged in protected conduct and that retaliation for the exercise of protected conduct was the "substantial" or "motivating" factor behind the defendant's conduct. See Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989). In the context of a retaliation claim brought by an inmate, the plaintiff must also demonstrate an absence of legitimate correctional goals for the conduct he contends was retaliatory. Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995) (citing Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985). An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support a claim under section 1983. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003).

[3] Plaintiff is advised that he may join multiple claims in the same case only if they are all against a single defendant. Fed. R. Civ. P. 18(a). Unrelated claims against different defendants must be pursued in multiple lawsuits. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007); see also Fed. R. Civ. P. 20(a)(2) (joinder of defendants not permitted unless both commonality and same transaction requirements are satisfied). For example, if plaintiff is challenging the incidents at CSP-SAC, he should not include his claims alleging excessive transfers, but should bring such claims in a separate civil rights action.

With regard to plaintiff's renewed request for appointment of counsel, such request is premature. When determining whether "exceptional circumstances" exist, the court must consider plaintiff's likelihood of success on the merits as well as the ability of the plaintiff to articulate his claims pro se in light of the complexity of the legal issues involved. <u>Palmer v. Valdez</u>, 560 F.3d 965, 970 (9th Cir. 2009) (district court did not abuse discretion in declining to appoint counsel). Because there is no operative complaint on file that demonstrates plaintiff can state a cognizable civil rights claim, the court is unable to determine whether appointment of counsel is warranted. Plaintiff's request is denied without prejudice.

In light of the above, IT IS HEREBY ORDERED that:

1. Plaintiff's filing, construed as a request for reconsideration (ECF No. 23) is denied.

2. Plaintiff's renewed motion for appointment of counsel (ECF No. 23) is denied.

3. Plaintiff is granted leave to amend to (a) raise claims based on incidents at CSP-SAC, as set forth in this court's March 29, 2013 order; OR (b) raise claims alleging excessive transfers, as set forth above.

4. Within thirty days from the date of this order, plaintiff shall file an original and one copy of the Amended Complaint. Plaintiff's amended complaint shall comply with the requirements of the Civil Rights Act, the Federal Rules of Civil Procedure, and the Local Rules of Practice. The amended complaint must also bear the docket number assigned to this case and must be labeled "Amended Complaint."

5. Failure to file an amended complaint in accordance with this order will result in the dismissal of this action.

Dated: November 21, 2013

carr1327.rec

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE